UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:16-CV-00609-GNS-DW

UNITED PARCEL SERVICE CO., et al.                                    PLAINTIFFS

v.

DNJ LOGISTIC GROUP, INC., et al.                                    DEFENDANTS

**MEMORANDUM OPINION & ORDER**

      This matter is before the Court upon Defendants' Motion to Dismiss (DN 12), which is ripe for adjudication.  For the reasons discussed below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.      BACKGROUND

      This is action arises out of a billing dispute between Plaintiff United Parcel Service Co. ("UPS"), Plaintiff UPS Worldwide Forwarding ("Worldwide Forwarding"), Defendant DNJ Logistic Group, Inc. ("DNJ"), and DNJ's CEO, Defendant Ralph Nabavi ("Nabavi").[1] Worldwide Forwarding contracted with UPS to transport Worldwide Forwarding's packages. (Compl. ¶ 19, DN 1).  To move certain of those packages across international routes that it did not fly, in September 14, 2010, UPS entered into a Small Package Cargo Handling Services Agreement ("the Agreement") with DNJ, a provider of freight forwarding services.  (Compl. ¶¶ 2, 18-19).  Among other things, the Agreement obligated DNJ to "provide personnel and equipment for the movement of UPS small package cargo . . . ."  (Compl. Ex. 1, at 2, DN 1-2

---

[1] Worldwide Forwarding and UPS are referred to collectively as "Plaintiffs."  DNJ and Nabavi are referred to collectively as "Defendants."

[hereinafter Agreement]; Compl. ¶ 4).  UPS shipped packages from its Louisville airport hub to its operations at Miami, Newark, and Dulles airports where it tendered the packages to DNJ.  DNJ then placed the packages into its own vehicles and delivered them to common carrier airlines for shipment to certain international destinations.  (Compl. ¶¶ 36-39).

Under Section 2.2 of the Agreement, UPS was required "to pay [DNJ] the price set forth in the attachment(s)" to the Agreement for services performed and to "forward payments to [DNJ] no later than thirty (30) days after receipt of a [DNJ] invoice."  (Agreement 5).  The parties executed a number of attachments to the Agreement, which provided that DNJ would charge a designated "rate per kilo" for particular routes, also known as "lanes."  (Agreement 12; Compl. ¶ 6).  For example, the parties agreed to certain rates per kilo for flights from Miami to Lima, Peru, and different rates per kilo for flights from Newark to Tel Aviv, Israel.  (Agreement 10-11; Compl. ¶ 6).

According to Plaintiffs, at Nabavi's direction, DNJ employees sent weekly invoices to Plaintiffs seeking payment for DNJ's services.  (Compl. ¶ 44).  Despite the terms of the Agreement, Worldwide Forwarding, not UPS, paid these invoices until June 2016.  (*Compare* Agreement 5, *with* Compl. ¶ 49).  In June 2016, Plaintiffs determined that they were being overbilled by DNJ—they contend DNJ was supposed to multiply the "actual weight" of the packages tendered to DNJ by the applicable "rate per kilo" and invoice UPS for the product, but DNJ did not do so.  Instead, DNJ allegedly used "inflated" package weights to compute the amounts it invoiced Plaintiffs, which caused Worldwide Forwarding to pay DNJ more than UPS owed under the Agreement.  (Compl. ¶¶ 34-35, 45, 69).  Upon discovery of this practice, Plaintiffs confronted DNJ and demanded remuneration.  (Compl. ¶¶ 51-52).  DNJ balked; it

returned packages, refused to further perform and, ultimately, terminated the Agreement. (Compl. ¶¶ 52-54).

Plaintiffs brought this lawsuit to recover from Defendants for the alleged overbillings. UPS and Worldwide Forwarding each assert breach of contract claims against DNJ. Worldwide Forwarding asserts separate claims against DNJ for negligent misrepresentation and unjust enrichment, and it asserts a claim for negligent representation against Nabavi personally, premised on the notion that he directed DNJ's employees to send the false invoices.[2] Defendants have moved to dismiss all claims under Fed. R. Civ. P. 12(b)(6).

## II.   JURISDICTION

The Court has jurisdiction over Plaintiffs' claims because there is diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1).

## III.   STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P 12(b)(6). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615

---

[2] UPS initially asserted negligent misrepresentation claims as well, but it has now abandoned those claims. (Pls.' Opp'n Defs.' Mot. Dismiss 14 n.2, DN 15).

F.3d 622, 627 (6th Cir. 2010) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## IV.   DISCUSSION

### A.   Breach of Contract

Under Kentucky law, Plaintiffs must support their claim for breach of contract with sufficient facts to establish the existence of "the contract, the breach, and . . . the loss or damage by reason of the breach." *Fannin v. Commercial Credit Corp.*, 249 S.W.2d 826, 827 (Ky. 1952) (citations omitted).   Plaintiffs allege that the Agreement required DNJ to bill Plaintiffs for the actual weight of the packages tendered; that DNJ breached the Agreement by instead billing Plaintiffs for weights in excess of the actual weight of the packages tendered, which "artificially increased the amounts charged to Plaintiffs"; and that "[a]s a direct consequence of DNJ's breach of the Agreement, Plaintiffs have been damaged in an amount to be determined at trial." (Compl. ¶¶ 64-70).   Defendants take issue with Plaintiffs' claim that the Agreement required DNJ to bill based upon actual weight, but that is not the basis of their motion.

Defendants first argue that the Court must dismiss UPS's breach of contract claim because Plaintiffs failed to allege that UPS suffered damages as a result of DNJ's alleged breach of the Agreement.   At first glance, Defendants' argument has some appeal, as the Complaint alleges—and Plaintiffs admit—that Worldwide Forwarding, not UPS, paid DNJ's invoices.   The Complaint, however, also alleges that when confronted with accusations of overbilling DNJ stopped performing under the Agreement and returned shipments to UPS which "resulted in

4

service failures for UPS (i.e., missing shipping deadlines for its customers)."  (Compl. ¶ 59).
Considering this allegation, along with Plaintiffs' general allegation that they were "damaged in
an amount to be determined at trial[,]"  (Compl. ¶ 70), Plaintiffs have sufficiently alleged that
UPS incurred damages as a result of DNJ's failure to perform its contractual obligations to UPS.

As Defendants point out, Plaintiffs did not specifically allege what monetary damages
UPS incurred as a result of the missed shipping deadlines.  Yet, only special damages need be
pleaded with specificity and, as explained below, those kinds of damages are not recoverable in
this case.  *See* Fed. R. Civ. P. 8(a), 9(g).  Plaintiffs were merely required to allege "enough facts
to state a claim to relief that is plausible on its face," which they have done.  *Traverse Bay Area*
*Intermediate Sch. Dist.*, 615 F.3d at 627 (6th Cir. 2010) (internal quotation marks omitted)
(quoting *Twombly*, 550 U.S. at 570).  In their opposition to Defendants' motion to dismiss,
Plaintiffs explain that "UPS [] inevitably suffered damages as a result [of the returned
shipments], including the cost of finding other vendors to tender the packages."  While the Court
cannot look to arguments made in briefs to determine whether the Complaint states a claim for
relief, *see Guzman v. U.S. Dep't of Homeland Sec'y*, 679 F.3d 425, 429 (6th Cir. 2012), the
Court can (indeed, must) make reasonable inferences in favor of Plaintiffs.  *See Total Benefits*
*Planning Agency*, 552 F.3d at 434 (6th Cir. 2008) (citing *Great Lakes Steel*, 716 F.2d at 1105).
Given that Plaintiffs have alleged that DNJ returned packages to UPS and UPS was damaged as
a result, it is reasonable to infer that UPS incurred damages in securing alternative transportation
for the packages.

Defendants next contend that Section 10.1 of the Agreement negates any damages that
UPS incurred as a result of the returned packages because those damages would be classified as
consequential or special.  Section 10.1 provides, "[i]n no event shall UPS or [DNJ] be liable for

any reason for special, incidental, or consequential damages, including but not limited to lost revenue or lost profit, resulting from performance or failure to perform under this Agreement." (Agreement 6).

The terms consequential and special damages are not defined in the Agreement, but Kentucky courts have explained the difference between those types of damages and so called "general damages."[3]  Consequential and special damages are those that "do not naturally or necessarily result from the breach but are, nevertheless, recoverable if caused by the breach and are foreseeable."  *See Dennis Anderson Park Lake Apartments, LLC v. Louisville & Jefferson Cty. Metro. Sewer Dist.*, No. 2012-CA-000288-MR, 2014 Ky. App. Unpub. LEXIS 822, at *15 (2014) (citing *McCracken & McCall v. Bolton*, 200 S.W.2d 923 (Ky. 1947)).  General damages, which are not excluded by Section 10.1, are "usually the cost of remedying the breach or defective performance . . . ."  *See id.* (citing *State Prop. & Bldgs. Comm'n v. H.W. Miller Constr. Co.*, 385 S.W.2d 211 (Ky. 1964)).

The Court disagrees with Defendants' blanket contention that all of UPS's potential damages are barred by the Agreement; at this point, it is too early to tell if the damages alleged by UPS fall under Section 10.1, or if they fall outside Section 10.1 as general damages.  As indicated above, it is reasonable to infer from allegations in the Complaint that UPS suffered damages in arranging alternative transportation for the packages after DNJ refused to deliver them.  Such damages would be merely a cost of remedying DNJ's alleged breach.  Therefore, to the extent the alternative transportation costs UPS more than it would have had to pay DNJ under the Agreement, the additional costs could be recoverable as general damages.

---

[3] Section 11.1 of the Agreement provides that it is governed by Kentucky law.  (Agreement 6).

Even if UPS's recovery for breach of contract were limited under Section 10.1, the Court would still be disinclined to dismiss the claim in its entirety. "Generally, in instances where a litigant establishes a cause of action but has not established entitlement to compensatory damages, nominal damages may be awarded." *Mo-Jack Distrib., LLC v. Tamarak Snacks, LLC*, 476 S.W.3d 900, 907 (Ky. App. 2015) (citing *Stoll Oil Refining Co. v. Pierce*, 343 S.W.2d 810, 811 (Ky. 1961)). While the Kentucky Court of Appeals has sent mixed signals, *compare Bennett v. Mercy Health Partners-Lourdes, Inc.*, 233 S.W.3d 723, 727-38 (Ky. App. 2007), *with USACO Coal Co. v. Liberty Nat'l Bank & Tr. Co. of Louisville*, 700 S.W.2d 69, 73 (Ky. App. 1985), Kentucky's highest court has recognized on multiple occasions that "nominal damages are always recoverable for a breach of contract, even though no actual damages be shown." *Harness v. Ky. Fluor Spar Co.*, 147 S.W. 934, 940 (Ky. 1912) (citation omitted); *see also Bond v. Patrick*, 241 S.W. 342, 343 (Ky. 1922) ("[N]ominal damages are always presumed and recoverable for a breach of contract." (citations omitted)). This Court, other courts within the Sixth Circuit, and commentators alike have recognized that under Kentucky law at least nominal damages are recoverable for breach of contract. *City of Owensboro v. Ky. Utils. Co.*, No. 4:04CV-87-M, 2008 U.S. Dist. LEXIS 82174, at *9 (W.D. Ky. Oct. 15, 2008) (citations omitted); *Powell Mountain Energy, LLC v. Manalapan Land Co.*, No. 09-305-JBC, 2012 U.S. Dist. LEXIS 80268, at *7 (E.D. Ky. June 8, 2012) (citations omitted); Ronald W. Eades, *Kentucky Law of Damages* § 3.2 (2017).[4] This is true even though proof of damages is a required element of a breach of contract claim. *See Acuity Brands, Inc. v. Bickley*, No. 13-366-DLB-REW, 2017 U.S. Dist. LEXIS 64894, at *81 (E.D. Ky. Mar. 31, 2017) (collecting cases).

---

[4] The Restatement (Second) of Contracts also generally provides, "[i]f the breach caused no loss or if the amount of the loss is not proved . . . , a small sum fixed without regard to the amount of loss will be awarded as nominal damages." Restatement (Second) of Contracts § 346 (Am. Law Inst. 1981).

Defendants also argue that Worldwide Forwarding's breach of contract claim should be dismissed because Worldwide Forwarding was neither a party to nor an intended third party beneficiary of the Agreement.  It is undisputed that Worldwide Forwarding did not sign the Agreement, but "[i]t is well established that a third person may, in his own right and name enforce a promise made for his benefit even though he is a stranger both to the contract and the consideration." *Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 579 (Ky. 2004) (internal quotation marks omitted) (citation omitted).  That said, "[o]nly a third-party who was intended by the parties to benefit from the contact . . . has standing to sue on a contract; an incidental beneficiary does not acquire such right." *Id.* (citation omitted).  A third party is an intended beneficiary if "the promisee's expressed intent is that the third party is to receive the performance of the contract in satisfaction of any actual or supposed duty or liability of the promisee to the beneficiary." *Sexton v. Taylor Cty.*, 692 S.W. 2d 808, 810 (Ky. App. 1985) (quoting *King v. Nat'l Indus., Inc.*, 512 F.2d 29, 33 (6th Cir. 1975)).  "In short, all that is necessary is that there be consideration for the agreement flowing to the promisor and that the promisee intends to extract a promise directly benefiting the third party." *Simpson v. JOC Coal, Inc.*, 677 S.W.2d 305, 309 (Ky. 1984).  Likewise, this Court and the Sixth Circuit have explained that in Kentucky "the central issue to determining whether the contract is intended to benefit a third party is the relevant intent of the promisee who purchases the promise from the promisor." *Louisville Gas & Elec. Co. v. Cont'l Field Sys. Inc.*, 420 F. Supp. 2d 764, 770 (W.D. Ky. 2005) (internal quotation marks omitted) (quoting *United States v. Wood*, 877 F.2d 453, 457 (6th Cir. 1989)).

In this case, DNJ is the promisor, UPS is the promisee, and Worldwide Forwarding is the third party.  Plaintiffs have alleged that DNJ received consideration under the Agreement in the

form of payments.  (Compl. ¶¶ 30, 44, 49).  Plaintiffs have also alleged that "Worldwide Forwarding contracted with UPS [] for UPS [] to perform—or arrange to have performed—air transportation services that would enable Worldwide Forwarding to fulfill its obligation to transport packages and cargo by air[,]" that "UPS [] contracted with DNJ in order to provide certain of those services for Worldwide Forwarding[,]" and that "Worldwide Forwarding paid DNJ for the invoices submitted to Plaintiffs pursuant to the Agreement."  (Compl. ¶¶ 19-20).

What more needs to be alleged to survive a motion to dismiss?  Well, according to Defendants, Plaintiffs' allegations, even if taken as true, do not show that Worldwide Forwarding is an intended third-party beneficiary of the Agreement because "there is nothing in the Agreement that shows the parties intended DNJ to assume a direct obligation to Worldwide Forwarding or that the Agreement was made and entered into directly and primarily for Worldwide Forwarding's benefit."  (Defs.' Mem. Supp. Mot. Dismiss 11, DN 12-1 [hereinafter Defs.' Mot.]).  Actually, Defendants contend that the "express terms of the Agreement . . . prove that Worldwide Forwarding cannot be an intended beneficiary of the Agreement."  (Defs.' Mot. 9).  Defendants maintain that the terms of the Agreement are so antithetical to Worldwide Forwarding's claimed third-party beneficiary status that the Court cannot look outside the Agreement's four corners.

In support of their position, Defendants note that the Agreement does not refer to Worldwide Forwarding by name.  They explain that the Agreement refers only to UPS's "affiliated companies[,]" (*See* Agreement 3), and, importantly, the Agreement includes these affiliates in only four discrete sections.  Specifically, under Section 1.7 of the Agreement, the term "UPS" includes UPS's affiliates only for sections 1.3-1.7, which Defendants contend are

not at issue in this case.  (Agreement 3).[5]  From this, Defendants aver that under the maxim *expressio unius est exclusio alterius*, remaining references to UPS—such as in Sections 1.1 and 1.2, which concern DNJ's obligations "to perform services required by UPS[,]" (*see* Agreement 2)—cannot include UPS affiliates such as Worldwide Forwarding.

Defendants posit that Worldwide Forwarding cannot be considered an intended third-party beneficiary of the Agreement solely because it is not mentioned in the Agreement. Defendants are correct that Worldwide Forwarding is not named in the Agreement, but that does not preclude Worldwide Forwarding from being an intended third-party beneficiary.  *Prime Finish, LLC v. Cameo, LLC*, 487 F. App'x 956, 961 (6th Cir. 2012) ("Cameo is not mentioned in the Supply Agreement—which, as explained above, is not necessary under Kentucky law . . . ." (citing *Olshan Found. Repair & Waterproofing v. Otto*, 276 S.W.3d 827, 831 (Ky. App. 2009))); *see also Louisville Gas & Elec. Co.*, 420 F. Supp. 2d at 772 ("The Court does not agree that the oral or written agreement must contain specific reference to the third party beneficiary.").

Moreover, Defendants' reliance on the Agreement's express terms and canons of contract construction is misplaced because the analysis of UPS' intent for Worldwide Forwarding to be a

---

[5] Section 1.3 provides:

> [DNJ] hereby agrees to indemnify, defend, release, and hold harmless UPS against any and all liabilities, claims, demands, suits, judgment , damages, and losses, including the costs, expenses and legal fees in connection therewith or incident thereto, arising out of the death of or injury to any person  whomsoever, including but not limited to employees of [DNJ] and UPS or arising out of loss of, damage to, or destruction of any property whatsoever, including but not limited to small package cargo, and other property of UPS or third parties, caused by or arising out of the negligence of [DNJ], excluding however injury or damages caused by the gross negligence or willful misconduct of UPS.

(Agreement 2).  Meanwhile, Sections 1.4 to 1.6 "required DNJ to obtain Comprehensive General Liability Insurance and provide certain insurance-related assurances to any affiliate of UPS . . . ." (Agreement 3-4; Compl. ¶ 22).

third-party beneficiary is not confined to the terms of the Agreement.  "The inquiry into third-party beneficiary status is different from ordinary contract interpretation, and Kentucky law directs courts to consider surrounding circumstances in the third-party beneficiary context." *Prime Finish*, 487 F. App'x at 960 (citing *Olshan Found.*, 276 S.W.3d at 831).  Kentucky courts and the Sixth Circuit "have consistently held that it is appropriate to consider the surrounding circumstances when determining whether a party is an intended beneficiary of the contract."  *Id.* at 959-60 (citing *Hendrix Mill & Lumber Co. v. Meador*, 16 S.W.2d 482, 484 (Ky. 1929); *Wood*, 877 F.2d at 457-58).  As a result, "[t]he intent to benefit a third party 'need not be expressed in the agreement itself; it may be evidenced by the terms of the agreement, the surrounding circumstances, or both.'"  *Id.* at 959 (6th Cir. 2012) (quoting *Olshan Found.*, 276 S.W.3d at 831).

Defendants rely on *Bariteau v. PNC Financial Services Group Inc.*, 285 F. App'x 218, 220-21 (6th Cir. 2008), and *King v. National Industries, Inc.*, 512 F.2d 29 (6th Cir. 1975), in support of their position, but those cases are not dispositive.  In *King*, the trustee for a company in bankruptcy argued that the company was a third-party beneficiary of a purchase agreement between its parent and another entity in which a large percent of the company's shares were sold. *King*, 512 F. 2d at 30, 32.  The case was appealed after the district court granted summary judgment against the bankruptcy trustee.  *Id.* at 30.  On appeal, the court did start its third-party beneficiary analysis with an examination of the agreement at issue, consistent with the principles articulated above.  *See id.* at 32-33; *see also Prime Finish*, 487 F. App'x at 960 ("In determining whether Cameo is an intended third-party beneficiary of the Supply Agreement, we 'look first to the . . . agreement itself,'. . . but we also consider evidence of the surrounding circumstances." (quoting *King*, 512 F.2d at 32)).  In examining the agreement, the court found that it "reveal[ed]

11

no indication of an intent on the part of the promisee to benefit" the company claiming third-party beneficiary status. *See King*, 512 F.2d at 32-33. In fact, the agreement indicated otherwise in providing that "the terms, provisions and conditions of this agreement shall bind and benefit the parties hereto and their respective successors, legal representatives and assigns." *Id.* at 33. As a result, the court concluded that the company was only an incidental beneficiary. *See id.* at 32-34. Notably, however, the agreement was the only evidence the Court considered because the plaintiff submitted no other probative evidence in support of the third-party beneficiary claim. *See id.*

Meanwhile, in *Bariteau*, the plaintiff did submit an affidavit to support his claim that he was an intended beneficiary of an "agreement" between a bank and a corporation, which agreement required two or more board members to sign before sums exceeding $1,000 could be withdrawn from the corporation's bank account. *Bariteau*, 285 F. App'x at 220-22.[6] The court, however, found the affidavit unhelpful for two reasons. *Id.* at 221-22. First, and most importantly to Defendants here, it stated that "when an agreement itself establishes that an individual is not a third-party beneficiary of it, extrinsic evidence generally has little role to play." *Id.* at 222 (citations omitted). The court found the agreement before it established that the plaintiff was not an intended third-party beneficiary at least in part because the agreement made no mention of the plaintiff, who "was not even an investor in the [corporation] at the time the agreement was executed and did not learn of the agreement until after the [corporation's] bankruptcy." *Id.* at 221 (citation omitted). Second, "even on its own terms, the affidavit

---

[6] The "agreement" was really a corporate resolution passed by the corporation's board of directors. *Id.* at 221. The Sixth Circuit assumed that the resolution was an agreement for purposes of its third-party beneficiary analysis. *Id.*

confirm[ed] that [the plaintiff] was at most an incidental beneficiary of the agreement." *Id.* at 222.

This case is different.  Unlike *King*, this matter is before the court on Defendants' 12(b)(6) motion to dismiss, and Plaintiffs have not relied solely on the Agreement in pleading Worldwide Forwarding's third-party beneficiary status.  Instead, Plaintiffs have alleged circumstances surrounding the Agreement that, taken as true, suggest that Worldwide Forwarding was an intended third-party beneficiary.  Specifically, Plaintiffs have alleged that Worldwide Forwarding paid DNJ directly for services performed under a contract that UPS entered into to satisfy its obligations to Worldwide Forwarding.  These facts are certainly more suggestive of third-party beneficiary status than those involved in *King* or *Bariteau*.  (Compl. ¶¶ 19-20).  Moreover, contrary to Defendants' position, not even the *Bariteau* court focused solely on the terms of the agreement at issue.  It noted in determining that the "agreement itself offered [no] indication that it was designed to benefit [the plaintiff]," that the plaintiff was not an investor when the agreement was made and did not learn of the agreement until months later— all circumstances extrinsic to the contract.  *Bariteau*, 285 F. App'x at 220-22.  More fundamentally, the court *did* consider extrinsic evidence (the affidavit) in rendering its decision; the extrinsic evidence was simply insufficient to carry the day.  *Id.* at 222.  Indeed, the Sixth Circuit recently clarified *Bariteau*, explaining that it "is best understood as simply explaining that extrinsic evidence should not be used to contradict an agreement that unambiguously establishes that a party is *not* a third party beneficiary."  *Prime Finish*, 487 F. App'x at 960.

While the Agreement, when considered in a vacuum, may not alone establish that Worldwide Forwarding was an intended third-party beneficiary, it does not "unambiguously establish[] that [Worldwide Forwarding] is *not* a third party beneficiary."  *See id.*  The reference

to "affiliates" in some sections but not others is far from an unambiguous disclaimer of third-party beneficiary claims.  Overall, the Court finds that Plaintiffs have alleged sufficient facts (again, taken as true for the present motion) for the Court to infer that "there is consideration for the agreement flowing to [DNJ] and that [UPS] intend[ed] to extract a promise [from DNJ] directly benefiting . . . [Worldwide Forwarding].  *See Simpson*, 677 S.W.2d at 309.  Therefore, DNJ's motion will be denied on this point.

### B.    <u>Negligent Misrepresentation</u>

The Kentucky Supreme Court in *Presnell* adopted the tort of negligent misrepresentation as laid out in the Restatement (Second) of Torts § 552.  Section 552 provides, in relevant part:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
> > (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
> > (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

Restatement (Second) of Torts § 552 (Am. Law. Inst. 1979).

Worldwide Forwarding's negligent misrepresentation claim against DNJ is premised on the following allegations:   DNJ provided invoices to UPS, and by extension Worldwide Forwarding, for guidance in Worldwide Forwarding's business; on their face, the invoices purported to reflect the actual weight of the packages shipped but, in fact, did not; "[a] company in DNJ's position should have taken care to ensure that the invoices reflected the actual weight of the shipments," but DNJ did not exercise reasonable care in communicating the information

14

contained in the invoices; Worldwide Forwarding relied on DNJ's "misrepresentations regarding the weight of the shipments, as DNJ was the entity who actually tendered the packages to the common carrier airline"; and if Worldwide Forwarding had known that what DNJ was doing, it would not have paid the invoices and would have terminated its relationship with DNJ.  (Compl. ¶¶ 73-80).  Defendants argue that these alleged facts do not support a negligent misrepresentation claim under Kentucky law.  The Court agrees.

While the scope of this recently adopted tort is not yet well-defined, the Kentucky Supreme Court in *Giddings & Lewis, Inc. v. Industrial Risk Insurers*, 348 S.W.3d 729 (Ky. 2011), indicated that a negligent misrepresentation claim premised on Section 552 is available only when the defendant is in the business of supplying information.  In *Giddings & Lewis*, the court considered whether Section 552 applied to product manufacturers and reviewed cases where negligent misrepresentation claims were found to be viable.  *Id.* at 744-46.  The court first looked to the facts of *Presnell*, noting that it involved a contractor suing a construction consulting firm for negligent misrepresentation.  *Id.* at 744-45.  Synthesizing Kentucky cases dealing with this type of claim, the court explained:

> These cases are instructive because they all involve a party who "supplies false information for guidance of others in their business transactions" and is liable to the recipient for failing to "exercise reasonable care or competence in obtaining or communicating the information."  Restatement (Second) of Torts § 552.  A construction consulting firm and an attorney providing a title opinion, as well as an auctioneer, offer services which consist of information upon which others will rely.  A manufacturer of a product is not in the business of supplying information but rather the product itself and, only incidentally, information about the product.

*Id.*

Federal courts applying Kentucky law have suggested likewise.  *See Our Lady of Bellefonte Hosp., Inc. v. Tri-State Physicians Network*, No. 06-141-HRW, 2007 U.S. Dist. LEXIS 72286, at *20 (E.D. Ky. Sept. 27, 2007) ("OLBH is in the business of providing medical

services to individuals residing in its community and . . . TSPN has not and cannot allege that the hospital is in the business of supplying information for the guidance of others in the business transactions with third parties."); *Baird v. Bayer Healthcare Pharms., Inc.*, No. 6: 13-077-DCR, 2013 U.S. Dist. LEXIS 156667, at *9-10 (E.D. Ky. Oct. 31, 2013) ("Kentucky law limits negligent misrepresentation claims to instances where a party is in the business of 'supplying false information for the guidance of others in their business transactions.'" (citation omitted)); *Bland v. Abbott Labs., Inc.*, No. 3:11-CV-430-H, 2012 U.S. Dist. LEXIS 19669, at *3-6 (W.D. Ky. Feb. 16, 2012).[7]

Worldwide Forwarding's negligent misrepresentation claim does not align with the Kentucky Supreme Court's present conception of that tort.  DNJ is not in the business of supplying information for the guidance of others, and it did not do so in this case.  Instead, it transported packages and sent bills for services rendered.  In this respect, DNJ is more like a product manufacturer than a consulting firm, an attorney, or an auctioneer.  As a result, Plaintiffs cannot credibly allege that the invoices DNJ sent to UPS constituted information supplied for the guidance of Worldwide Forwarding in its business transactions.

---

[7] Subsequent cases from this Court have questioned the reasoning of *Baird* and *Bland*, but those cases do not disagree with the proposition that, under Kentucky law, negligent misrepresentation claims brought under Section 552 are viable only when the defendant is in the business of supplying information upon which others rely.  *See, e.g.*, *Smith v. Bayer Healthcare Pharms. Inc.*, No. 3:14CV-00006-CRS, 2015 U.S. Dist. LEXIS 157561, at *7-8 (W.D. Ky. Nov. 23, 2015).  Rather, following the Sixth Circuit's lead in *Morris Aviation, LLC v. Diamond Aircraft Industries, Inc.*, 536 F. App'x 558 (6th Cir. 2013), they hold that, in Kentucky, "the Restatement (Third) of Torts § 9 now applies to negligent misrepresentation claims associated with the sale of a product . . . ."  *Smith*, 2015 U.S. Dist. LEXIS 157561, at *7-8 (citing *Morris Aviation*, 546 F. App'x at 567-68).  Section 9 provides that, "[o]ne engaged in the business of selling or otherwise distributing products who, in connection with the sale of a product, makes a fraudulent, negligent, or innocent misrepresentation of material fact concerning the product is subject to liability for harm to persons or property caused by the misrepresentation."  Restatement (Third) of Torts:  Products Liability § 9 (Am. Law Inst. 1998).  Section 9 is not applicable here because there is no allegation that DNJ was involved in the sale of products.

Plaintiffs argue that negligent misrepresentation is not so limited under Kentucky law, but the cases they rely upon do not support this conclusion.  Plaintiffs cite *Barton Brands, Ltd. v. O'Brien & Gere, Inc. of North America*, 550 F. Supp. 2d 681 (W.D. Ky. 2008), and *Schejbal v. Faulkner Engineering & Construction, Inc.*, No. 5:05-cv-65-R, 2005 U.S. Dist. LEXIS 15323 (W.D. Ky. July 27, 2005).  Both of these cases predate *Giddings & Lewis* and are not persuasive.

In *Barton Brands*, this Court addressed whether "*Presnell* signals that Kentucky courts would now also recognize negligent misrepresentation in the products liability context and in so doing would permit recovery for 'purely economic loss' . . . ."  *Barton Brands*, 550 F. Supp. 2d at 686.  Finding "no Kentucky case which consider[ed] the viability of a negligent misrepresentation claim in the context of a products liability case," this Court went on to predict that the Kentucky Supreme Court would allow negligent misrepresentation claims in products liability cases for purely economic loss.  *Id.*  However, the Kentucky Supreme Court in *Giddings & Lewis* reached the opposite conclusion, stating that "the economic loss rule applies to a negligent misrepresentation claim just as it does to negligence and strict product liability claims."  *Giddings & Lewis*, 348 S.W.3d at 746.  Moreover, as indicated above, the *Giddings & Lewis* court signaled that Section 552 does not apply to product manufacturers because, unlike consultants, attorneys, and auctioneers, manufacturers are not in the business of supplying information.  *See id.* at 744-46.[8]

In *Schejbal*, the plaintiff brought a negligent misrepresentation claim against the shareholders of a construction company after the construction of their home was delayed.  *Schejbal*, 2005 U.S. Dist. LEXIS 15323, at *2-3.  The shareholders moved to dismiss, but this

---

[8] Again, while subsequent federal cases have suggested that the *Giddings & Lewis* court adopted the Restatement (Third) of Torts § 9 and that Kentucky courts allow negligent misrepresentation claims against product manufacturers to be brought under this provision, Section 9 is inapplicable here.

Court declined to dismiss the negligent misrepresentation claims, although the Court's analysis was limited to one paragraph and did not explain the substance of the alleged misrepresentations. *See id.* at *5. Moreover, notwithstanding *Giddings & Lewis*, recent Kentucky Court of Appeals decisions would appear to render the *Schejbal* court's conclusion untenable. *See, e.g.*, *Tabler v. Wolhoy*, No. 2008-CA-001913-MR, 2010 Ky. App. Unpub. LEXIS 442, at *6-7 (May 21, 2010). For these reasons, Worldwide Forwarding's negligent misrepresentation claim against DNJ will be dismissed.

Worldwide Forwarding also asserts a claim for negligent misrepresentation against Nabavi in his individual capacity. Essentially, Plaintiffs allege that Nabavi is personally liable for negligent misrepresentation because he directed DNJ employees to send the invoices to them. Worldwide Forwarding's negligent misrepresentation claim against Nabavi fails for the same reason as its claim against DNJ; the tort does not fit the facts at hand. As a result, this claim will also be dismissed.

### C.   <u>Unjust Enrichment</u>

Unjust enrichment "is applicable as a basis of restitution to prevent one person from keeping money or benefits belonging to another." *Haeberle v. St. Paul Fire & Marine Ins. Co.*, 769 S.W.2d 64, 67 (Ky. App. 1989). The claim has three elements: "(1) benefit conferred upon the defendant at plaintiff's expense; (2) a resulting appreciation of the benefit by defendant; and (3) inequitable retention of benefit without payment for its value. *Collins v. Ky. Lottery Corp.*, 399 S.W.3d 449, 455 (Ky. App. 2012) (citation omitted). "The claim for unjust enrichment is a legal fiction created to permit recovery where equity says there should be recovery, although there is no recovery in contract." *Holley Performance Prods. v. Keystone Auto. Operations, Inc.*,

No. 1:09-CV-00053-TBR, 2009 U.S. Dist. LEXIS 102709, at *11 (W.D. Ky. Oct. 29, 2009) (citation omitted).

Worldwide Forwarding's unjust enrichment claim is premised on the same facts as its other claims: it paid DNJ based on the invoices DNJ provided; the invoices appeared to be based on the actual weight of the packages shipped but in fact were not.  Defendants argue that Worldwide Forwarding's unjust enrichment claim fails because it is predicated on the terms of the Agreement.  More particularly, Defendants explain that "[b]eyond the terms in the Agreement, there are no independent allegations in the complaint regarding how and/or what rates DNJ should have charged."  (Defs.' Reply Supp. Mot. Dismiss. 14-15, DN 17).  According to them, "[t]his is critical because without such independent allegations there is no question that Worldwide Forwarding's purported damages for the unjust enrichment claim are based entirely on the terms in the Agreement."  (Defs.' Reply Supp. Mot. Dismiss 15).

The Court declines to dismiss Worldwide Forwarding's unjust enrichment claim at this stage.  Defendants are correct that there is little room for unjust enrichment claims when an express contract governs the parties' relationship.  As a general matter, equitable remedies are only available when legal remedies are insufficient.  *See Bell v. Commonwealth*, 423 S.W. 3d 742, 747-48 (Ky. 2014); *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962).  It is well-settled in Kentucky that "[t]he doctrine of unjust enrichment has no application in a situation where there is an explicit contract which has been performed."  *Codell Constr. Co. v. Commonwealth*, 566 S.W.2d 161, 165 (Ky. App. 1977) (citation omitted).  Furthermore, when applying Kentucky law, federal courts have routinely dismissed unjust enrichment claims based on the same subject matter as breach of contract claims.  *See, e.g.*, *Poynter v. Ocwen Loan Servicing, LLC*, No. 3:13-cv-773-DJH-CHL, 2016 U.S. Dist. LEXIS 130140, at *18-19 (W.D. Ky. Sept. 23, 2016).

19

However, this Court has also recognized that in the early stages of litigation, when it has not yet been determined whether there is an enforceable contract between the parties, it is proper for a party to allege claims for unjust enrichment and breach of contract in the alternative. *Holley Performance Prods.*, 2009 U.S. Dist. LEXIS 102709 at *11-17 (collecting cases). Indeed, the Federal Rules of Civil Procedure allow parties to request relief "in the alternative or different types of relief" and to "state as many claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(a)(3), (d)(3). For this reason, Defendants' motion to dismiss Plaintiffs' unjust enrichment claim will be denied.

## V.   CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss (DN 12) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' breach of contract claims and Worldwide Forwarding's unjust enrichment claim remain; the negligent misrepresentation claims are dismissed.

**Greg N. Stivers, Judge**
**United States District Court**
July 19, 2017

cc:     counsel of record

20